IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW STARYKOWICZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 C 8195 |
| INTERNATIONAL MANAGEMENT ) | |
| GROUP (UK) LIMITED ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On November 14, 2013, plaintiff Andrew Starykowicz ("Starykowicz") filed a single-count complaint (Dkt. No. 1) against defendant International Management Group (UK) Limited ("IMG") alleging IMG negligently and carelessly operated a triathlon race at which Starykowicz was injured. The triathlon took place in Abu Dhabi, United Arab Emirates ("UAE"). On January 9, 2014, IMG filed a motion to dismiss for insufficient service, lack of personal jurisdiction, and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(5), 12(b)(2), and 12(b)(3), respectively. (Dkt. No. 9.) On February 27, 2014, this court granted (Dkt. No. 20) Starykowicz's motion for leave to file an amended complaint (Dkt. No. 18); Starykowicz filed his pending amended complaint ("Amended Complaint") (Dkt. No. 21 ("Am. Compl.")); and IMG filed two separate motions to dismiss: one for insufficient service, lack of personal jurisdiction, and improper venue (Dkt. No. 22), and a second motion to dismiss for *forum non conveniens* (Dkt. No. 23). For the reasons explained below, IMG's for *forum non conveniens* (Dkt. No. 23) is granted.

BACKGROUND

The following facts are drawn from Starykowicz's Amended Complaint and the agreement governing Starykowicz's participation in the Abu Dhabi International Triathlon, which is referenced in and integral to the allegations of Starykowicz's Amended Complaint.[1]

I.  The Parties and the Events Preceding the 2012 Abu Dhabi International Triathlon

Starykowicz is a professional triathlete who resides in Wauconda, Illinois. (Am. Compl. ¶ 1.) IMG is a foreign corporation headquartered in London, United Kingdom. (*Id.* ¶ 2.) IMG organizes and operates athletic events around the world, including the Abu Dhabi International Triathlon ("Triathlon"), which is the annual race giving rise to this lawsuit. (*Id.* ¶ 6; Dkt. No. 30 ("Pl.'s Resp.") at 2.) In 2011, Starykowicz signed up for the 2011 Triathlon[2] through the website IMG created at http://www.abudhabitriathlon.com. (Am. Compl. ¶¶ 6-9.) The website was "fully interactive" and provided a portal for prospective athletes to register and pay for entry into the Triathlon. (*Id.* ¶ 7.) IMG also advertised the 2011 Triathlon through trade magazines and on social media websites. (*Id.* ¶ 8.)

On March 12, 2011, Starykowicz raced in the 2011 Triathlon and finished in tenth place. Because of his strong finish, IMG invited Starykowicz to race in the 2012 Triathlon as an "IMG-sponsored athlete." (*Id.* ¶ 11.) Starykowicz and IMG entered into an agreement (the "Triathlon Agreement") under which IMG agreed to provide Starykowicz with entry to the 2012 Triathlon,

---

[1] IMG attached the agreement to its motion to dismiss for *forum non conveniens*. (Dkt. No. 23 Ex. A.) In ruling on a motion to dismiss pursuant to Rule 12(b)(3), or the similar motion to dismiss for *forum non conveniens*, a district court may consider a document outside but integral to the pleadings. *See Continental Gas Co.* v. *American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (holding district court may consider contract containing an arbitration clause in ruling on a motion to dismiss pursuant Rule 12(b)(3)).

[2] Starykowicz competed in the Triathlon twice: once on March 12, 2011 and again on March 3, 2012. (Am. Compl. ¶ 6.) In this opinion, the court will refer to the March 12, 2011 race as the 2011 Triathlon and the March 3, 2012 race as the 2012 Triathlon.

two round-trip tickets from Chicago to Abu Dhabi, and hotel accommodations for Starykowicz and a guest. (*Id.* ¶ 13; *see also* Dkt. No. 23 Ex. A ("Triathlon Agreement").) The Triathlon Agreement required Starykowicz to participate "fully" in the 2012 Triathlon and "use all reasonable efforts to complete the [race]." (Triathlon Agreement at 2.) The Triathlon Agreement further required Starykowicz to appear at events intended to promote the 2012 Triathlon, to promote the 2012 Triathlon through social media outlets, to provide "quote[s] of a positive nature" about the event, and to provide a list of local press contacts to IMG. (Am. Compl. ¶ 14; Triathlon Agreement at 2.)

The Triathlon Agreement contains a liability waiver and a forum selection clause. The liability waiver provides that Starykowicz shall not be liable to IMG for "any indirect or consequential loss or damage arising out of or in connection with this Agreement." (Triathlon Agreement ¶ (c).) The Triathlon Agreement does not limit IMG's liability to Starykowicz. (*Id.*) The forum selection clause states "[t]his agreement shall be governed by and construed in accordance with the laws of the [sic] England and the parties agree to submit to the exclusive jurisdiction of the English Courts." (*Id.* ¶ (j).)

II. The Events of the 2012 Triathlon

The remaining allegations in Starykowicz's Amended Complaint describe a professional athlete's worst nightmare. IMG placed an aid station in an allegedly dangerous location on the bicycle course of the 2012 Triathlon. (Am. Compl. ¶¶ 18-25.) IMG's chosen location required riders to slow down and cross through the passing lanes—the lanes for faster riders to pass slower riders—in order to receive food, water, and other aid. (*Id.* ¶ 25.) Race volunteers, apparently recognizing the danger of IMG's aid station placement, took it upon themselves to rearrange the aid station. (*Id.* ¶ 26.) Unfortunately, the volunteers' redesign was even more

dangerous because it required volunteers to cross the bicycle course on foot to resupply the aid station. (*Id.* ¶ 27.) As Starykowicz approached the aid station on his bicycle, non-party race volunteer Carly Ann Williams ("Williams") darted out in front of him. (*Id.* ¶ 30.) Starykowicz was unable to stop and collided with Williams. (*Id.* ¶ 31.)

Because Starykowicz was winning the bicycle portion of the race by a large margin when he collided with Williams, he tried to finish the race. (*Id.* ¶¶ 28, 32.) Unfortunately, his injuries were too painful and he was forced to retire. (*Id.* ¶ 32.) Starykowicz reported to the emergency room, was told that his injuries were limited to "swelling, bruising, and minor tears," and left the hospital the same evening. (*Id.* ¶ 34.) Williams was not so lucky. She sustained a severe head injury that required six weeks in the hospital, part of which she spent in a medically-induced coma. (*Id.* ¶ 33.) Williams has thankfully recovered and currently works in the UAE. (*Id.*)

On March 4, 2012, the day after the race, IMG representatives informed Starykowicz that there was a warrant for his arrest and escorted him to a police station. (*Id.* ¶¶ 35-36.) After subjecting Starykowicz to more than six hours of questioning and eight hours of confinement, UAE authorities charged him with (i) unintentional hitting, (ii) jeopardizing a pedestrian's safety, and (iii) failing to take "due care measures and precautions" while driving a vehicle on the road, which was of course closed for the race. (*Id.* ¶ 38.) Although UAE officials released Starykowicz from the holding cell after charging him, they confiscated his passport and his criminal instrument (the bicycle). (*Id.* ¶ 39.) After five weeks of uncertainty, the UAE Attorney General stated that he would release Starykowicz's passport if Starykowicz paid AED 200,000 (USD 54,000) in "blood money," which would be paid to Williams's family if she died from her injuries. (*Id.* ¶ 40.) If she recovered, the Attorney General would return the money to

Starykowicz. (*Id.*) Finally, the UAE required Starykowicz to post a bond of AED 5,000 (USD 1,300). (*Id.* ¶ 41.)

It is not clear from Starykowicz's Amended Complaint whether he ever paid the blood money. Somehow, presumably upon Williams's recovery, he was allowed to return home to the United States. (*See* Am. Compl. ¶ 42.) Upon his return, Starykowicz consulted several doctors and learned that his injuries, which the UAE doctors diagnosed as "swelling, bruising, and minor tears," were much more severe. (*Id.* ¶ 42.) Starykowicz required surgery, rehabilitation, and physical therapy which caused him to forego competing in triathlons until October 2012. As a testament to his talent and resilience, Starykowicz won two of his first three races after coming back from injury and set a bicycle course record at Ironman Florida in 2012. Notwithstanding his recent success, however, Starykowicz claims that his injuries from the 2012 Triathlon in Abu Dhabi continue to hinder his performance in the swimming and running portions of his triathlon races. (*Id.* ¶ 46.)

On November 11, 2013, Starykowicz filed this lawsuit against IMG. Starykowicz's single-count Amended Complaint alleges that as a direct and proximate result of IMG's careless and negligent operation of the 2012 Triathlon, Starykowicz collided with non-party volunteer Williams and was severely injured. (*Id.* ¶ 52.) Furthermore, Starykowicz claims the UAE medical personnel's misdiagnosis of his injuries and the UAE's decision to detain him for five weeks caused additional pain and suffering. (*Id.* ¶ 53.) Starykowicz seeks damages for the amount he would have made for winning the 2012 Triathlon, the cost of his medical expenses arising out of the collision and misdiagnosis, and the earnings he would have made as a triathlete if he were able to compete between March 2012 and October 2012. (*Id.* ¶ 45.)

ANALYSIS

Defendants present four alternative arguments for dismissing Starykowicz's Amended Complaint: (1) the court lacks personal jurisdiction over IMG; (2) venue is improper in this court pursuant to 28 U.S.C. § 1391(a); (3) Starykowicz has failed to serve IMG pursuant to the requirements of the Federal Rules of Civil Procedure and the Hague Convention;[3] and (4) there is a valid and enforceable forum selection clause specifying the courts of England as the parties' chosen forum. As discussed below, the court ultimately dismisses Starykowicz's Amended Complaint on *forum non conveniens* grounds because the Triathlon Agreement requires the parties to submit to the exclusive jurisdiction of the English Courts. *See Atl. Marine Const. Co., Inc.* v. *U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 580 (2013) (clarifying that dismissal on *forum non conveniens* grounds is the appropriate way to enforce a forum selection clause pointing to a foreign forum). In light of the court's holding, the court need not decide IMG's jurisdiction and venue arguments.

I. Forum Non Conveniens

Although a defendant "invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430 (2007), the same is not true when the parties have agreed to a valid forum selection clause. *Atl. Marine Const. Co., Inc.,* 134 S. Ct. at 583 n.8 (2013). As the Supreme Court has made clear, there is a strong presumption in favor of enforcing forum selection clauses. *Id.* at 583; s*ee also M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972) (holding courts should "give effect to the legitimate expectations of the parties, manifested in their freely

---

[3] Starykowicz argues, and IMG appears to concede, that IMG's third basis for dismissal is moot because IMG has been served pursuant to the Hague Convention. The court agrees. (*See* Dkt. No. 31 (proof of service on IMG).)

negotiated agreement," by enforcing forum selection clauses). Among other reasons, judicial enforcement of such clauses reduces economic uncertainty and recognizes that such clauses are often preconditions to doing business in the first place. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 583. "In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain." *Id.* (internal quotation marks omitted).

A forum selection clause in an international agreement is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10 (enforcing agreement between American and German companies to litigate any disputes before the London Court of Justice). "The Supreme Court has construed this exception narrowly: forum selection . . . clauses are 'unreasonable' (1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Bonny* v. *Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir.1993) (internal citations and quotation marks omitted).

Starykowicz argues that the scope of the forum selection clause in the Triathlon Agreement does not include his tort claim. (Dkt. No. 30 ("Starykowicz Resp.") at 13.) In support of his position, Starykowicz points to the language of the forum selection clause, which does not expressly include matters "arising out of the" Triathlon Agreement, and further argues that the Triathlon Agreement's failure to impose any duty of care on IMG weighs in favor of excluding tort claims from the reach of the forum selection clause. (*Id.* at 12.) The court finds Starykowicz's arguments unpersuasive.

The Triathlon Agreement, first and foremost, is a contract to participate in the 2012 Triathlon. The chief requirement of the Triathlon Agreement is that Starykowicz participate "fully" in the race and "use all reasonable efforts to complete [the race]." (Triathlon Agreement at 2.) Although Starykowicz characterizes the Triathlon Agreement as a "publicity contract," the Triathlon Agreement expressly designates the publicity services as "ancillary" to Starykowicz's participation in the race. (*Id.*) Accordingly, Starykowicz was injured in the course of performing his primary obligation under the Triathlon Agreement. In light of the Supreme Court and the Seventh Circuit's guidance to interpret forum selection clauses broadly, *see, e.g.*, *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581; *IFC Credit Corp.* v. *Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 616 (7th Cir. 2006), the court cannot exclude Starykowicz's tort claim from the forum selection clause here merely because the clause does not expressly address claims "arising out of" Starykowicz's performance of the contract. As the Seventh Circuit has held, "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain as to the appropriate forum for litigation." *Hugel* v. *Corp.* of *Lloyd's*, 999 F.2d 206 (7th Cir. 1993) (quoting *Coastal Steel Corp.* v. *Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)); *see also Am. Patriot Ins. Agency* v. *Mut. Risk Mgmt.*, 364 F.3d 884, 888 (7th Cir. 2004) (rejecting argument that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit"); *id.* at 889 ("the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes").

Starykowicz's argument that his tort claim must be excluded from the forum selection clause because the Triathlon Agreement does not impose a duty of care on IMG is similarly unavailing. In *O'Connor* v. *Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007), a Third Circuit case Starykowicz cites in support of his personal jurisdiction argument, the Third Circuit held that the sale of a spa package carried an implied duty to exercise care in doing so. *Id.* at 324. Accordingly, the Third Circuit held that personal jurisdiction existed because the plaintiff's tort claim arose out of the defendant's sales contract, notwithstanding the contract's silence concerning the defendant's a duty of care. The Third Circuit's decision in *O'Connor* is not binding on this court but underscores why Starykowicz's claim is ultimately destined for England. Starykowicz's sole basis for personal jurisdiction is that his tort claim, as it must, "arise[s] out of or relate[s] to" IMG's activities in Illinois. (Starykowicz Resp. at 7 (citing *GCIU-Employer Retirement Fund* v. *Godlfarb Corp.* 565 F.3d 1018, 1023 (7th Cir. 2009).) IMG's only contact with Illinois in connection with the 2012 Triathlon, however, was its contract with Starykowicz, who is an Illinois citizen.[4] Thus, Starykowicz stands in the challenging posture of arguing that his tort claim "arises out of" the Triathlon Agreement for purposes of jurisdiction, but falls outside the Triathlon Agreement for purposes of circumventing the Triathlon Agreement's forum selection clause. The court cannot abide.

Because the parties to the Triathlon Agreement intended that disputes concerning the 2012 Triathlon be litigated in England, and effectuated that intent through a valid forum selection clause, the court must honor the parties' bargain absent "extraordinary circumstances."

---

[4] Starykowicz argues that IMG also conducted activities in Illinois through its website and trade publications. According to the Amended Complaint, however, those advertisements concerned the 2011 Triathlon. (*See* Am. Compl. ¶¶ 7-8.) Starykowicz entered the 2011 Triathlon through IMG's website but he contracted directly with IMG to participate in the 2012 Triathlon.

*Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581. Starykowicz has not presented any extraordinary circumstances; although he states that litigating in Abu Dhabi would be prejudicial and potentially dangerous, his only argument against an English forum is that travel would "be difficult." (Starykowicz Resp. at 18.) For Starykowicz, an international triathlete who travels across the world for races, traveling to England is simply not an undue burden, nor is it impractical given the location of all of the evidence should his claim proceed to a hearing. Furthermore, "whatever inconvenience [Starykowicz] would suffer by being forced to litigate in the contractual forum as [he] agreed to do was clearly foreseeable at the time of contracting." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 582 (citations omitted). IMG's motion to dismiss for *forum non conveniens* is granted.

II.     Personal Jurisdiction, Venue, and Service

Because the court grants IMG's motion to dismiss for *forum non conveniens*, it need not address IMG's motion to dismiss for lack of personal jurisdiction, improper venue, and insufficient service. Although jurisdiction must generally be the threshold inquiry, the Supreme Court has held that district courts may bypass the jurisdictional question "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co.*, 549 U.S. at 432 (holding a district court has discretion to evaluate a motion to dismiss on *forum non conveniens* grounds before resolving whether it has personal jurisdiction of the defendant).

CONCLUSION

For the reasons explained above, IMG's "motion to dismiss for *forum non conveniens*" [23] is granted as to Starykowicz's single-count Amended Complaint. Because the court dismisses Starykowicz's Amended Complaint on *forum non conveniens* grounds, IMG's "motion to dismiss for insufficient service, lack of personal jurisdiction and improper venue" [22] is

moot. Although the court sympathizes with Starykowicz's nightmarish ordeal, an international triathlete assumes certain risks when he contracts with foreign corporations and competes in foreign countries. One of those risks is that the athlete may have to litigate his claims outside of his home state. Civil case terminated.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: June 4, 2014